**In re Application of the REPUBLIC OF KAZAKHSTAN.**

**Misc. No. H-98-425.**

United States District Court, S.D. Texas.

Dec. 3, 1998.

---

Michael Swan, Houston, Texas, for Petitioner, Republic of Kazakhstan.

David Long, Dallas, Texas, for Claimant, Biedermann International.

Daniel Goforth, Houston, Texas, for Movant Barker.

## Opinion on Reconsideration of Arbitral Assistance

HUGHES, District Judge.

### 1. Introduction.

A California corporation and a Near–Eastern nation are arbitrating in Stockholm. This court has allowed the nation to depose a non-party and collect documents from it under a federal law allowing district courts to assist foreign tribunals and their litigants with discovery in the United States. *See* 28 U.S.C. § 1782. In its motion to reconsider, the company says that the statute does not apply to commercial arbitration. Having reconsidered its decision, the court persists in its conclusion that the statute applies to this arbitration.

### 2. Context.

■ Biedermann International, Inc., and the Republic of Kazakhstan are parties to an arbitration in Stockholm related to their joint venture to develop oil fields. They have appeared before a three-member panel under the rules of the Arbitration Institute of the Stockholm Chamber of Commerce. In connection with the arbitration, Kazakhstan wishes to get documents from Murdock Baker, Jr., a non-party in Houston.

### 3. Tribunals.

■ Biedermann says that the statute's term "foreign or international tribunal" does not include commercial arbitration. The statute covers commercial arbitration by its plain meaning, informed by common sense. In fact, Biedermann indirectly concedes the point in its objection, where it says that it is a claimant in "a private commercial arbitration currently pending before a *tribunal* constituted by the Arbitration Institute" (emphasis added).

### A. Legislative History.

Because the statute's legislative history does not include discussion of commercial arbitration, Biedermann contends that the statute does not reach it; to the contrary, however, the legislative history indicates no intent to exclude commercial arbitration. Although the history simply furnishes no information about arbitration, it does explain that "assistance is not confined to proceedings before conventional courts." H.R. Rep. 1052, 88th Cong., 1st Sess. 9 (1963), *reprinted in* 1964 USSCAN 3782, 3788. The words of the statute—rather than silences in the legislative history—make the statute. The text reaches broadly to adjudicative bodies, including commercial arbitration.

### B. International Arbitration.

Classifying international arbitration as a tribunal under the statute might furnish "assistance in excess of what a domestic arbitration litigant is entitled to under the Federal Rules of Civil Procedure." *In re Application of National Broadcasting Company, Inc., and NBC, Europe, Inc., for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782,* 1998 WL 19994, *7 (S.D.N.Y.1998). The justification for limiting international arbitration to what may be available in a domestic arbitration is not obvious. Domestic and international proceedings might frequently differ. Parties to a Swedish arbitration might be able to get more discovery in America than they could get in a Swedish court. The two types of arbitrations need not be governed by the identical standards or the same rules. Logic does not suggest that discovery in international arbitration should be reduced to the lowest common denominator of discovery in domestic arbitration. Often, domestic interests are subordinated in an international context. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (allowing an international antitrust claim to be arbitrated although a purely domestic one may not be).

### C. Federal Arbitration Act.

■Adopted in 1925, the Federal Arbitration Act is part of the federal policy favoring

arbitration. *See* 9 U.S.C. §§ 1–14. Arbitration is a traditional, efficient, and legitimate means of resolving disputes. As in the international context where other standards may apply, the federal law favoring arbitration agreements preempts conflicting state law. *See Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Separate from the Arbitration Act itself, two additional federal laws reinforce it in specific contexts. *Labor Management Relations Act,* 29 U.S.C. §§ 141–97; *Consumer Product Warranty Act,* 15 U.S.C. §§ 2310–12. Based on its long history of approving arbitration, Congress is likely to have meant that "foreign tribunal" includes commercial arbitration.

### D. *Other Tribunals.*

Historically many types of tribunals have operated apart from the sovereign's law courts. Ecclesiastical courts heard church cases and applied canon law. Courts martial heard claims arising from armed forces. Even as the sovereign was consolidating its authority over those two segments of society, specialized and separate courts developed to serve commerce. Guilds developed to represent and protect merchants and craftsmen; guilds evolved their own courts to enforce standards and restrictions. The City of London, as an illustration, created its own court system primarily for disputes related to commerce. *See* John E. Bebout, An Ancient Partnership: Local Government, Magna Carta, and the National Interest 11 (1966); William Blackstone, Commentaries on the Laws of England 273 (1898). These courts applied a law that supplemented the law of the European nations. *See* M.M. Knappen, Constitutional and Legal History of England 102, 182 (1942); John Henry Merryman, Civil Law Tradition: An Introduction to the Legal Systems of Western Europe and Latin America 12–13 (2d ed.1985); Nathan Rosenberg & L.E. Birdzell, Jr., How the West Grew Rich: The Economic Transformation or the Industrial World 113–14 (1986).

Similarly, the feudal system employed manorial courts for local conflicts, including civil suits other than those about land. In effect, manorial courts conducted arbitrations be-fore a panel comprised not of judges, but of a lord and others he selected. *See* Theodore F.T. Plunkett, A Concise History of the Common Law 143 (1956).

Courts in the United States would assist the tribunals of Taiwan even though it is not a sovereign under international law. Its consulates were transmuted into trade offices when the United States withdrew its recognition.

Courts must not interfere in arbitration for that would defeat its purpose. Interference, however, varies by perspective, and perspective varies by party. Congress has authorized courts to assist international tribunals, and because the character of tribunals ranges from the pomp of a high common-law court in London through the folk wisdom of an *alcalde* in Piedras Negras to the practicality of a committee of ship owners in Visby, the key to judicial assistance must be that the assisted institution performs an adjudicative function.

### 4. *Reciprocity.*

Based on the pattern of American domestic laws as well as the plain text, the statute on assisting foreign tribunals applies to the discovery sought by Kazakhstan in Houston, Texas. The law of the opponent's domicile may not allow the company a parallel opportunity to discover documents, but the location of other witnesses in inhospitable jurisdictions—despite a general attractiveness at law of symmetry and reciprocity—should not restrict the American practice for American witnesses.

Biedermann says that the Republic of Kazakhstan would not assist it in a similar request for discovery because it is itself the party litigant in the arbitration. If Biedermann had a similar need, it should have asked someone—the Swedes arbitrating or Kazakhstan. As it is, we have no good faith request from the company, just a hypothetical two-wrongs argument couched in an insult.

### 5. *Scope of Discovery.*

Biedermann also complains that the Stockholm tribunal did not authorize Kazakhstan to depose Baker. This court has permitted a

limited deposition of Baker or the custodian of his records purely to aid the production of the selected financial records described in the subpoena. Kazakhstan may depose Baker about the records. The arbitral tribunal consented to Kazakhstan's pursuing production of documents in the United States; the deposition simply furthers the document production. Biedermann may cross examine Baker at the deposition; however, if it wants additional documents from Baker, it must specify the documents. As the subpoena clearly says, Baker need not appear; he may send a person who is fully knowledgeable about the documents, mooting his request for his appearance to be set to a time after the arbitration.

### 6. *Conclusion.*

The statute applies to arbitration, including commercial arbitration, and the court having reconsidered its decision will not quash the subpoena (a) for Baker or his custodian of records and (b) for the specific documents. Long before "alternative dispute resolution" became trendy, commercial arbitration had relieved the court system of cases, allowing it to work on other cases. Parties to international commercial transactions will not agree to include arbitration clauses in contracts if the ability to get a few, necessary documents from non-party witnesses cannot be assisted by the courts in America.